Cite as 2025 Ark. 83

# SUPREME COURT OF ARKANSAS

**No.** CR-22-715

| | | |
|---|---|---|
| DERIC SMITH | | **Opinion Delivered** May 22, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-20-336] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ALEX GUYNN, JUDGE |
| | | AFFIRMED. |

**BARBARA W. WEBB, Justice**

Deric Smith appeals from a jury verdict in the Jefferson County Circuit Court finding him guilty of capital murder in the shooting death of Emmanuel Foster, and first-degree battery in the wounding of Jason Anderson. He received a sentence of life imprisonment without parole for the murder and fifteen years for the battery, with firearm enhancements of ten years and five years, respectively. All sentences were set to run consecutively. On appeal, Smith argues that there was insufficient evidence that he committed capital murder and that the State did not disprove the defense of justification. We affirm.

## I. *Facts and Procedural History*

Smith was charged with the premeditated and deliberate formulation of capital murder in accordance with Arkansas Code Annotated section 5-10-101(a)(4) (Supp. 2021). He was also charged with first-degree battery as well as a firearm enhancement for each of his alleged crimes. Smith raised the affirmative defense of justification. Smith's girlfriend,

Lamiesha Toney, was similarly charged and tried in the same proceeding.[1] The murder weapon was a gun that Toney had in the front seat of Smith's Lincoln Town Car. Both of the victims were shot while sitting in the front seats of the Lincoln, while the car was moving.

At the insistence of Smith's mother, Toney and Smith surrendered to the police. Detective Corey Wilfong interviewed Toney. Toney claimed that she shot the victims after a scuffle initiated by Anderson, who punched her in the face. Smith came to her defense, and Anderson grabbed her gun. Smith dislodged the gun from Anderson's hand, and it fell under the seat. Toney claimed that she retrieved the weapon and shot both men because she was "scared." Toney further stated that Anderson jumped out of the car after he was shot. Foster remained behind the wheel but crashed into a house after he was shot in the back of the head. Toney's statement was admitted into evidence.

Although Toney's statement implicated her as the shooter, other witnesses suggested that it was Smith who fired the gun. Raven Breedlove, an eyewitness, testified that she saw Anderson fall out of a Lincoln Town Car and noted that he was bleeding profusely. She asked him what had happened, and he told her that "Scrappy or Strappy" had shot him.

Elise McMiller testified that she was a passenger in a car that was traveling in the opposite direction from the Lincoln. She observed the Lincoln swerving and then sideswiping the car in front of her. McMiller further testified that the Lincoln crashed into

---

[1]They were both represented by the same trial counsel but waived the conflict on the record.

a house and that two persons got out of the vehicle and fled the scene. Those persons were later identified as Toney and Smith.

Jessie Valdez, a traffic control officer with the Pine Bluff Police Department, testified that he was the first police officer on the scene. He found Anderson lying in the street, covered in blood from a bullet wound to his jaw. He asked Anderson who had shot him, and Anderson mumbled, "Scrappy."

Jimmeisha Palmer, a Pine Bluff Police Department crime scene tech sponsored photographs of a large tattoo on Smith's arm bearing his street name, "ScrapG."

At the close of the State's case, Smith moved for a directed verdict, arguing that there was no evidence of premeditation. After his directed-verdict motion was denied, Smith testified in his own defense.

Smith confirmed that he was the shooter. According to Smith, he spent the day sipping brandy and selling marijuana. He stated that Foster and Anderson, who were acquainted with him, wanted to steal his duffle bag full of marijuana, but he hid it at his mother's house. They forced him and Toney to get into the back seat of his Lincoln. In his testimony, Smith described himself to the jury as a man who is always "very aware of everything surrounding him" and is able to "keep a cool, level head when [he is] under pressure." Smith claimed that Toney tried to reach for her gun that she had purchased from a pawn shop in Houston, but Anderson grabbed it and used it to strike him in the head. The two men scuffled. The gun fell beneath the front seat, and Toney retrieved it. Smith stated that he saw Toney's hand shaking. He took the gun from her and shot Anderson. Anderson exited the car. Smith asserted that he put the gun to Foster's head and ordered

him to stop. Foster refused, and he swerved and sideswiped another vehicle as the fight over the gun ensued. According to Smith, he saw a large gathering taking place under a blue canopy. Foster was heading toward the gathering. Smith ordered him to stop the car. However, Foster hit him in the neck, exclaimed "Old Crip, you better put your seatbelt on then," and hit the gas. Smith stated that he pushed his seat all the way back and shot Foster in the back of his head. The car slowed immediately. Reaching the steering wheel from the back seat, Smith managed to avoid the gathering but crashed into a house next door. He and Toney fled. Smith maintained that he and Toney left the scene because he had a firearm and drugs in the car.

The jury was instructed on Smith's justification defense but convicted him as charged. It also convicted Toney of second-degree murder and first-degree battery. *See Toney v. State*, 2025 Ark. App. 3. Smith timely appealed.

II. *Argument and Analysis*

Smith first argues that the circuit court erred in denying his directed-verdict motion made at the close of the State's case. We decline to consider this argument. We have held that a defendant waives his initial motion for directed verdict by presenting evidence in his defense at the close of the State's case. *See Rudd v. State*, 308 Ark. 401, at 406, 825 S.W.2d 565, 567 (1992); *see also Key v. State*, 325 Ark. 73, 76, 923 S.W.2d 865, 867 (1996). Under those circumstances, this court decides a challenge to the sufficiency of the evidence as the evidence existed at the close of the case when he renewed his former motion. *Key*, 325 Ark. at 76, 923 S.W.2d at 867. Here, Smith presented evidence in his defense after the State rested its case. Smith's first point on appeal is therefore unavailing.

4

Regarding the sufficiency of the evidence, as measured at the close of the trial, Smith again argues that there was insufficient proof of premeditation. We disagree.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the conviction. *Id.*, 570 S.W.3d at 452. We affirm the verdict if substantial evidence supports it. *Id.*, 570 S.W.3d at 452. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 570 S.W.3d at 452.

When we view the evidence in the light most favorable to the State, it establishes premeditation and deliberation. The jury, as the sole judge of witness credibility, could credit Smith's testimony and determine that he was not acting upon a sudden impulse but was instead acting with premeditation and deliberation. *See, e.g.*, *Hyatt v. State*, 2018 Ark. 85, at 11, 540 S.W.3d 673, 679 ("Premeditation means to think of beforehand, and deliberation means weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon a sudden impulse without the exercise of reasoning powers."). Smith testified that he is a man at all times actively aware of his surroundings, who keeps a level head under pressure. Smith described the decision to shoot Foster as having followed his demand to stop the car, shifting his position in the car by pushing his seat back, and taking aim—all evidence that the jury could consider in finding at least a brief period of reflection. Furthermore, the location of Foster's fatal wound, the result of a shot aimed at his skull, could establish premeditation and deliberation. *See, e.g.*, *Wyles v. State*,

2024 Ark. 128, at 5, 696 S.W.3d 296, 299 ("[T]he type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused" all may support an inference of premeditation and deliberation). We therefore affirm on this point.

Smith next argues that the State failed to disprove his justification defense. He urges us to find significance in the fact that the State provided no response to his assertion of the justification defense when he moved for a directed verdict. Without citation to authority, Smith argues that the State "completely ignored its responsibility to respond to the motion," given that once it is raised, it becomes an element that must be disproved by the State. He further contends that the State never argued, at all, the basis for which it disproved the element. Furthermore, he asserts that he stated facts that proved justification and that he did not act with premeditation or deliberation. We disagree.

Justification becomes a defense when any evidence tending to support its existence is offered to support it. *Schnarr v. State*, 2018 Ark. 333, at 10, 561 S.W.3d 308, 314–15. The State has the burden of negating the defense once it is put in issue. *Humphrey v. State*, 332 Ark. 398, 409, 966 S.W.2d 213, 218 (1998). Justification is considered an element of the offense, and once raised, it must be disproved by the State beyond a reasonable doubt. Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2021); *Anderson v. State*, 353 Ark. 384, 404, 108 S.W.3d 592, 605 (2003). Justification is a matter of intent and a question of fact for the jury. *Humphrey*, 332 Ark. at 409, 966 S.W.2d at 219.

As noted previously, the jury was instructed on justification. Accordingly, the decision whether to credit this defense was a jury call. A jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent

evidence. *Brunson v. State*, 368 Ark. 313, 317, 245 S.W.3d 132, 136 (2006). The jury was not obligated to accept Smith's self-serving testimony that shooting Foster, who was unarmed and driving a car on a city street, was a reasonable use of deadly force. The jury was well within its authority to conclude that the defense of some bystanders, none of whom testified at trial, or himself and Toney did not warrant shooting Foster in the back of the head. Accordingly, we affirm on this point as well.

## III. *Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Smith. No prejudicial error has been found.

Affirmed.

Special Justice TROY BRASWELL joins.

BRONNI, J., not participating

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.